**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

KEVIN C. BETSKOFF, SR.             :
                                       :
                                       :
      v.                             :   Civil No. CCB-12-1998
                                       :
                                       :
BANK OF AMERICA, N.A.          :
                                       :
                                       :

## MEMORANDUM

       Plaintiff Kevin C. Betskoff, Sr. ("Mr. Betskoff"), proceeding *pro se*, has filed this lawsuit against Bank of America ("the Bank"), alleging five causes of action arising out of an incident in which the Bank removed funds Mr. Betskoff had deposited into an account owned by a third-party account holder to pay arrears on a credit card associated with that account. Now pending before the court is the Bank's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the defendant's motion will be granted as to all five counts.

## BACKGROUND

       In May 2009, Kevin Betskoff arranged to have his Maryland state income tax refund and unemployment benefits direct deposited into a Bank of America checking account owned by Iona Investment Group, LLC. (ECF No. 2, Compl., ¶ 5.) Mr. Betskoff lacked a bank account of his own, so he received permission to use the limited liability company's account from Ms. L. Iona Canaday, the company's resident agent. (*Id.* at ¶ 6; ECF No. 9, Ex. A.) Pursuant to this arrangement, a tax refund in the amount of $884.70 and two unemployment payments totaling

1

$180 were deposited into the account during the month of May.[1] (ECF No. 2, Compl., ¶ 7.) On or around May 22, 2009, when Mr. Betskoff attempted to retrieve his money, he was notified that, on May 13, 2009, Bank of America had "offset" the entirety of the deposited funds to pay arrears on an unsecured revolving credit card associated with the company's account. (*Id.* at ¶¶ 8, 9.) Mr. Betskoff contacted the Bank and informed a representative that he did not possess a credit card with the account and was not responsible for the debt associated with it. (*Id.* at ¶ 10.) He requested that the Bank return the funds he had deposited, but the Bank denied his request. (*Id.*) On May 23, 2009, Mr. Betskoff contacted the Bank's collection department and explained that he needed the funds to pay a fine so as not to violate a court order, which could lead to his arrest. (*Id.* at ¶ 11.) Once again, the Bank denied Mr. Betskoff's request. (*Id.* at ¶ 12.)

On May 11, 2010, Mr. Betskoff filed suit in Carroll County Circuit Court against Bank of America, alleging five causes of action arising out of this incident: 1) violation of the Maryland Consumer Debt Collection Act; 2) violation of the Maryland Consumer Protection Act; 3) trover and conversion; 4) intentional infliction of emotional distress; and 5) violation of 15 U.S.C. § 1666h of the Truth in Lending Act. Mr. Betskoff is seeking compensatory and punitive damages. The case was removed to this court on July 5, 2012, pursuant to 28 U.S.C. § 1441, on the basis of both diversity and federal question jurisdiction.[2] Bank of America has moved to dismiss all five counts of Mr. Betskoff's complaint.

## ANALYSIS

### I. Standard of Review

---

[1] Mr. Betskoff claims actual damages in the amount of $1,100 – the amount of money allegedly removed from the company's account on May 13, 2009 – yet the deposits associated with his tax refund and unemployment payments total $1,064.70.

[2] Removal was proper on both grounds; the motion to remand will be denied.

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions."  *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## II. Discussion

Having carefully considering Mr. Betskoff's complaint, as well as the arguments raised in the parties' filings, the court must conclude that Mr. Betskoff has failed to state a claim upon

which relief can be granted. Even construing Mr. Betskoff's *pro se* complaint liberally, it fails to meet the requirements set forth by the Supreme Court in *Iqbal* and *Twombly*. Below, the court addresses each of Mr. Betskoff's claims in turn.

A. Maryland Consumer Debt Collection Act

Mr. Betskoff alleges that the Bank's actions violated the Maryland Consumer Debt Collection Act (MCDCA). He does not specify the provisions of the MCDCA on which his claims are based; instead, he cites broadly to Md. Code Ann., Com. Law § 14-201 *et seq*. The Bank argues in response that the MCDCA does not apply because Mr. Betskoff's complaint fails to allege the basic element for a successful claim under the MCDCA: the presence of a consumer transaction underlying the debt sought to be collected.

The MCDCA prohibits certain acts by "collectors" in collecting or attempting to collect an alleged debt. Md. Code Ann., Com. Law § 14-202. The Act defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." *Id.* at § 14-201(b). "Consumer transaction" is defined as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." *Id.* at § 14-201(c).

Turning to the present case, Mr. Betskoff does not allege that the Bank was attempting to enforce a consumer debt when it removed money from the account at issue.  Rather, Mr. Betskoff acknowledges that the account belonged to Iona Investment Group, a limited liability company. He further notes that his deposits were used to "pay a delinquent unsecured credit card payment" associated with the company's account. (ECF No. 2, Compl. ¶ 8.) Because he has not

alleged the presence of a consumer transaction underlying the debt sought to be collected, the

MCDCA does not apply and Mr. Betskoff's claim must be dismissed.

B. Maryland Consumer Protection Act

Mr. Betskoff also alleges that the Bank violated the Maryland Consumer Protection Act

(MCPA). He claims that "[b]y performing the above and [sic] acts, without informing [him] what

the reasons were for the removal of his money prior to its removal and, even after he disputed

such charge to him, Bank of America committed unfair and deceptive trade practices in violation

of § 13-303" and that such practices "misled" him. (ECF No. 2, Compl., ¶¶ 23, 24.)

The MCPA prohibits unfair and deceptive trade practices against consumers. Md. Code

Ann., Com. Law § 13-303. Section 13-303 provides as follows:

> A person may not engage in any unfair or deceptive trade practice, as defined in
> this subtitle or as further defined by the Division, in:
> (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer
> realty, or consumer services;
> (2) The offer for sale, lease, rental, loan, or bailment of consumer goods,
> consumer realty, or consumer services;
> (3) The offer for sale of course credit or other educational services;
> (4) The extension of consumer credit;
> (5) The collection of consumer debts; or
> (6) The purchase or offer for purchase of consumer goods or consumer realty
> from a consumer by a merchant whose business includes paying off consumer
> debt in connection with the purchase of any consumer goods or consumer realty
> from a consumer.

*Id.* The Act defines "consumer" as "an actual or prospective purchaser, lessee, or recipient of

consumer goods, consumer services, consumer realty, or consumer credit." *Id.* at § 13-101(c)(1).

"Consumer debts" are "debts or obligations . . . primarily for personal household, family, or

agricultural purposes." *Id.* at § 13-101(d).  The purpose of the MCPA is both to protect the

consumer by setting minimum standards and to restore public confidence in merchants. *Boatel*

*Indus., Inc. v. Hester*, 77 Md. App. 284, 302-03 (1988).

As with his MCDCA claim, Mr. Betskoff alleges no facts to indicate that the debt the

Bank sought to collect was a "consumer debt" as defined under the MCPA. Furthermore,

although Mr. Betskoff claims that the Bank violated the MCPA by not notifying him in advance

of the removal of funds, he has presented no case law establishing a bank's duty to inform

individuals depositing funds under the name of a third-party account holder of the ultimate fate

of those funds. Rather, a banking institution's duties are generally defined by the direct

relationship it holds with its customers. *See, e.g.*, *Jacques v. First Nat'l Bank*, 307 Md. 527, 531-

32 (1986).  No such relationship exists in this case. Indeed, Mr. Betskoff does not allege that the

Bank had any knowledge of the source of the deposited funds at the time the "offset" occurred

such that it could have informed him prior to the funds' removal.  As such, Mr. Betskoff's

MCPA claim also fails.

C. Truth in Lending Act (TILA)

Mr. Betskoff alleges that the Bank violated 15 U.S.C. § 1666h of the Truth in Lending

Act (TILA) by removing the deposited funds from the company's account without his consent.

Section 1666h of TILA provides in relevant part:

> A card issuer may not take any action to offset a cardholder's indebtedness arising
> in connection with a *consumer credit transaction* under the relevant credit card
> plan against funds of the cardholder held on deposit with the card issuer unless--
> (1) such action was previously authorized in writing by the cardholder in
> accordance with a credit plan whereby the cardholder agrees periodically to pay
> debts incurred in his open end credit account by permitting the card issuer
> periodically to deduct all or a portion of such debt from the cardholder's deposit
> account, and
> (2) such action with respect to any outstanding disputed amount not be taken by
> the card issuer upon request of the cardholder.

15 U.S.C. § 1666h(a) (emphasis added).

Here, again, Mr. Betskoff's claim fails because he does not sufficiently allege that the

underlying transaction upon which the Bank attempted to collect was a consumer transaction.

TILA defines a "consumer" transaction as "one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i). As Mr. Betskoff acknowledges, the account at issue was owned by Iona Investment Group – a limited liability company, not a "natural person."  As such, TILA does not apply to the account, and Mr. Betskoff's claim must be dismissed.

D. Trover and Conversion

Mr. Betskoff also fails to state a claim for conversion.[3] Mr. Betskoff alleges that the Bank's removal of $1,100 "was not previously agreed upon, was intentional, without permission or justification, and constituted a conversion (Theft) of [his] money." (ECF No. 2, Compl., ¶ 26.) The Bank argues that because Mr. Betskoff does not own the account, the Bank did not need his permission to transfer the funds.

In Maryland, conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen,* 354 Md. 547, 560 (1999) (quoting *Interstate Ins. Co. v. Logan,* 205 Md. 583, 588-89 (1954)) (internal quotation marks omitted). "[T]o recover for conversion, 'one must have either been in actual possession or have had the right to immediate possession in the converted asset.'" *First Union Nat. Bank v. New York Life Ins. & Annuity Corp.*, 152 F. Supp. 2d 850, 854 (D. Md. 2001) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 64 (1986)). In Maryland, money can be the subject of a claim for conversion only if it is shown "that the defendant converted specific segregated or identifiable funds." *Jasen*, 354 Md. at 564.

---

[3] "Trover" is the technical name of the action to recover damages for a wrongful conversion.  *See Wallander v. Barnes*, 341 Md. 553, 573 (1996).

Mr. Betskoff acknowledges that the Iona Investment Group – not he – owns the account with Bank of America. As a consequence, once Mr. Betskoff deposited funds into the company's account, he forfeited his right to those funds. Because he had no right to the immediate possession of the funds in the company's account, his claim of wrongful conversion must be dismissed.

E. Intentional Infliction of Emotional Distress

Finally, Mr. Betskoff alleges that Bank of America's conduct toward him amounted to intentional infliction of emotional distress (IIED). In Maryland, the tort of intentional infliction of emotional distress is "rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514 (1995), *cert. denied*, 341 Md. 172 (1996)) (internal citations and quotations omitted), *aff'd*, 131 S.Ct. 1207 (2011); *see Farasat v. Paulikas,* 32 F. Supp. 2d 244, 247 (D. Md. 1997). "To succeed on a claim for intentional infliction of emotional distress in Maryland, a plaintiff must demonstrate that the defendant intentionally or recklessly engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress." *Snyder v. Phelps*, 131 S.Ct. 1207, 1215 (2011) (citing *Harris v. Jones*, 281 Md. 560, 565–66 (1977)).

To prove that the conduct in question was "extreme and outrageous," the plaintiff must show that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris,* 281 Md. at 567 (quoting Restatement (Second) of Torts § 46 comment d (1965)). Mr. Betskoff alleges that, although he pled with Bank representatives to return the $1100 it withdrew and explained his dire need for the money to pay a fine and avoid

arrest, the Bank refused both of his requests.  Mr. Betskoff further claims that the unexpected withdrawal of his money "caused a great deal of stress, anxiety, and emotional distress . . . that ultimately led to an anxiety disorder requiring doctor's visits and medication." Although Mr. Betskoff's situation is unfortunate, the allegations he has put forth are in no way sufficient to prove that the Bank's conduct was "extreme and outrageous." *See, e.g.*, *Dick v. Mercantile-Safe Deposit & Trust Co.*, 63 Md. App. 270, 276 (1985) (holding that bank vice-president's conduct in insulting and shouting at debtors and threatening to attach their homes and wages was not so extreme and outrageous as to establish intentional infliction of emotional distress). Given that Mr. Betskoff has failed to prove this element of his IIED claim, there is no need to determine whether he has proven the other three elements. *See Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) ("Each element must be pled and proved with specificity" in order for an IIED claim to stand); *Bagwell,* 106 Md. App. at 515-16 (the "extreme and outrageous" element "is, in large respect, the entire tort") (internal quotation marks and citation omitted). Accordingly, this claim must also be dismissed.

      A separate Order follows.


<u>October 15, 2012</u>                    _____/s/_____
Date                                  Catherine C. Blake
                                     United States District Judge